IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

LULA P. KING,                         :

    Plaintiff,                    :

vs.                                   :
                              CIVIL ACTION 07-0797-M
MICHAEL J. ASTRUE,                    :
Acting Commissioner of
Social Security,                      :

    Defendant.                    :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was waived in this action.[1] Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

---

[1] The Parties' Joint Motion for Waiver of Oral Argument (Doc. 18) is **GRANTED**.

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was fifty-four years old, had a high school education (Tr. 71), and had previous work experience as a maid (Tr. 143).  In claiming benefits, Plaintiff alleges disability due to hypertension, blindness in the left eye, and mild mental retardation (Doc. 13).

The Plaintiff filed an application for SSI on September 20, 2004 (*see* Tr. 13).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that King was capable of performing her past relevant work as a housekeeper (Tr. 10-19).  Plaintiff requested review of the hearing decision (Tr. 9) by the Appeals Council, but it was denied (Tr. 5-8).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, King alleges that:  (1) The ALJ erred in finding that she had borderline intellectual functioning; (2) the ALJ erred in finding that she had the severe impairment of "borderline adaptive functioning

2

with IQ scores in the mental retarded range on testing by an examiner chosen by the claimant's attorney;" (3) the ALJ erred in improperly applying the disability rules to her hypertension impairment; and (4) the Appeals Council erred in failing to remand the case based on additional evidence submitted to it (Doc. 14).  Defendant has responded to—and denies—these claims (Doc. 15).  The medical evidence of record follows.

Plaintiff was admitted to the Thomasville Infirmary on January 13, 2004, for four nights, for treatment of her hypertension (Tr. 76-91).  It was noted that she had not seen a physician since 1989 and had no history of hypertension though she was characterized as being non-compliant (Tr. 78).  X-rays of her chest showed cardiomegaly (Tr. 85-86).  King was placed on a low sodium diet and released without problems.

Plaintiff was admitted to Thomasville Infirmary on January 30, 2004, again for four nights, for malignant hypertension (Tr. 92-99).  It was noted that it was questionable as to whether she had been following her low-salt diet and she indicated that she may have missed some of her medications (Tr. 94).  An EKG showed sinus bradycardia.  Her blood pressure was under control on discharge.

King was seen by Dr. T. B. Darji between March 11, 2004 and August 13, 2004 on three different occasions (Tr. 100-08).  On the first examination, Plaintiff complained of high blood

pressure which was 110/70 (Tr. 106).  On April 12, King had no complaints; her blood pressure was 90/58 (Tr. 103).  On August 13, Plaintiff needed refill medications; her blood pressure was 170/92 (Tr. 102).

Dr. Dae Y. Song examined and treated King on September 14 and December 30, 2004 for pain in her blind left eye; Plaintiff stated that she had been blind in that eye since birth (Tr. 109-10).

An examination was performed on August 3, 2005 by Psychologist Donald Blanton who found King's conversation to be logical with no psychomotor retardation or agitation; her insight was limited and her judgment was fair (Tr. 114-19).  On the WAIS-III, Plaintiff obtained a Verbal IQ score of 67, a performance IQ of 63, and a Full Scale IQ of 63, which placed her in the mild range of mental retardation.  On the WRAT-Revised III, King was found to read and spell at a fourth-grade level and perform math at a fifth-grade level.  Blanton thought that these were a valid assessment of her intellectual functioning; he assigned her a Global Assessment of Function (hereinafter *GAF*) of 60.[2]  The Psychologist completed a mental medical source form in which he

---

[2]The ALJ stated the following:  "According to the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, a Global Assessment of Function of between 51 and 60 represents:  'Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)'" (Tr. 15 n.1).

4

indicated that Plaintiff was markedly restricted in her ability to understand, remember, use judgment, and carry out detailed or complex instructions; he indicated that this was a lifelong condition (Tr. 118-19).  Blanton further indicated that King was moderately limited in her ability to respond to customary work pressures and maintain attention, concentration or pace for periods of at least two hours; he also stated that King's condition was not likely to deteriorate if she were placed in a stressful situation and that she could manage her own benefits, if they were to be awarded (*id.*).

Dr. Darji also provided more office notes of three visits, from December 15, 2005 through December 21, 2006 in which her blood pressure was elevated (Tr. 120-23).  Specifically, on the first visit, her pressure was 180/80; on August 23, 2006, it was 160/90; and on the last visit, it was 212/114.  Darji adjusted King's medications to correct her uncontrolled hypertension.

At the hearing before the ALJ, Plaintiff testified that she lived with her mother and did the cooking, cleaning, laundry, dishes, and housework (Tr. 141; *see generally* Tr. 141-50, 162-64).  She testified that she had not worked since she had filed for disability benefits because she was blind in her left eye and had been since birth; she also had high blood pressure which she checks regularly at home with a gauge.  King stated that she had one child who was in college which she had raised with some help

from his father.  Plaintiff stated that she could read and write a little.

Dr. James N. Anderson testified as a medical expert, stating that he had been present at the hearing and reviewed the medical evidence (Tr. 151-53).  He stated that King's blindness and hypertension did not meet the Listings and that her limitations allowed her to perform light work with the further restriction of monocular vision.  Anderson further stated that her pain, which was only intermittent, ranged from mild to moderate.  Upon questioning by Plaintiff's attorney, the doctor stated that her blindness would meet the second part of Listing 12.05C.

Sydney Garner testified as a psychological expert, stating that she had been present for the hearing and had also examined the medical evidence of record (Tr. 154-62).  The Psychologist noted that King had had no treatment for mental illness, though she had been diagnosed to have mild mental retardation.  It was Garner's opinion that Plaintiff functioned in the low borderline intellectual range; she based this opinion on King's ability to perform housework, cook, clean, and attend church.  Garner also noted her ability to read, write, and take and maintain a schedule of her blood pressure readings.  The Psychologist pointed out that King had no grammar problems and that school records indicated no longitudinal history of mental retardation. It was Garner's opinion that Plaintiff would not meet the

requirements of Listing 12.05.  Upon questioning by King's attorney, the Psychologist stated her opinion that Plaintiff had not achieved any vocational or academic skills.

Steve Cosgrove testified, as a vocational expert (hereinafter *VE*), that King's prior relevant work was as a housekeeper (Tr. 164-68).  Following a hypothetical question by the ALJ,[3] which included Blanton's mental source opinion, the VE stated that King could perform her past relevant work as well as the work performed by a cafeteria attendant and an egg packer.

After summarizing all of the evidence, the ALJ gave substantial weight to the testimony of Anderson and Garner and stated that King's testimony of limitation was disproportionate to the objective medical evidence of record (Tr. 10-19).  The ALJ went on to find that Plaintiff could perform her past work as a housekeeper.

King has raised claims that the ALJ erred in finding that she had borderline intellectual functioning and that the ALJ erred in finding that she had the severe impairment of "borderline adaptive functioning with IQ scores in the mental retarded range on testing by an examiner chosen by the claimant's attorney" (Doc. 14, p. 1).[4]  Plaintiff has argued that Garner's

---

[3]The Court notes that Plaintiff has not challenged the ALJ's hypothetical in this action.

[4]The Court will discuss these together and treat them as a single claim.

7

testimony was wrong as no examining or treating source provided that diagnosis and that the ALJ should not have relied on it (Doc. 14, pp. 2-5).  King's argument relies, primarily, on the findings of Psychologist Blanton.

The Court notes at the outset of this discussion that King has not made the argument that she meets the requirements for Listing 12.05C even though her IQ scores would indicate the possibility of its consideration.[5]  Even so, the Court finds that Plaintiff has not proven the requirements of that Listing as she has not demonstrated that she has deficits in adaptive behavior.  Plaintiff finished high school, admitted that she could read and write—even if only a little, raised a son essentially on her own, worked as a housekeeper, and now cares for her sick mother.  This does not demonstrate that she has deficits of adaptive behavior.  This was the basis of Garner's finding that King suffers from borderline intellectual functioning rather than being mildly mentally retarded; the ALJ relied on this testimony in reaching his own decision.

Plaintiff has argued though that Garner and the ALJ are

---

[5]The introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2007).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2007).

wrong because it is the IQ scores that have demonstrated that she is mildly mentally retarded.[6]  Accepting this argument as true, it would still mean that the ALJ's error is, at most, harmless as Plaintiff has not demonstrated that she has met the requirements of any Listing or that she is unable to perform her past relevant work as a housekeeper or any other work.  These claims do not merit either reversal or remand, so must be rejected.

Plaintiff next claims that the ALJ erred in improperly applying the disability rules to her hypertension impairment (Doc. 14, pp. 5-7).  King objects to the ALJ's characterization of her hypertension as *labile* and to remarks made by the ALJ which do not reflect the proper analysis of disability.

The Court first notes that *labile* means unstable.  The Court finds nothing improper about this characterization, noting that it adequately reflects the changing nature of King's blood pressure.

Plaintiff has also complained of improper remarks made by the ALJ.  These comments included language about how millions of people have hypertension and still work as well as the statement that no physician had suggested that King's blood pressure required complete inactivity or bedrest for her (Doc. 14, p. 6; *cf.* Tr. 16).

---

[6]A good measure of this argument relies on evidence that was submitted after the ALJ's decision was entered and is the subject of another of King's claims, which will be taken up later.

The Court notes that while the ALJ's remarks were unnecessary, the Court does not find that they demonstrated that he did not properly analyze the evidence before him.  The ALJ followed the sequential evaluation process and determined that King was capable of performing her past relevant work as a housekeeper.  No physician of record has indicated that Plaintiff could not do that work.  King's claim is without merit.

Plaintiff has also claimed that the Appeals Council erred in failing to remand the case based on additional evidence submitted to it after the ALJ's decision was entered (Doc. 14, p. 7).  That evidence will now be summarized.

King was examined on March 14, 2007 by John R. Goff, a clinical Neuropsychologist (Tr. 124-30).  Goff noted that Plaintiff was logical and coherent in her speech; Plaintiff was oriented in all spheres.  On the WAIS-III, King received a Verbal IQ score of 56, a performance IQ of 54, and a Full Scale IQ of 51; the Psychologist noted that although this placed her in the lower end of the mildly retarded range of intelligence, he thought that she was demented rather than mentally retarded.  On the WRAT-IV, King scored at the first- and second-grade levels in word reading, sentence comprehension, spelling, math computation, and reading; Goff said these scores indicated that she was functionally illiterate.  The Psychologist noted Blanton's evaluation and stated that the decline in scores could probably

be explained by dementia, most likely caused by her hypertension. Goff also noted that "she appeared to have a great deal of difficulty understanding, following and carrying out even very simple instructions (Tr. 127). The Psychologist completed a mental medical source opinion in which he indicated that King was markedly or extremely limited in most all measures of work abilities (Tr. 129-30).

Plaintiff's attorney also submitted information from the fourth edition of the Diagnostic and Statistical Manual of Mental Disorders (hereinafter (*DSM-IV*), published by the American Psychiatric Association (Tr. 131-33). One excerpt provides information on borderline intellectual functioning which states as follows:

> This category can be used when the focus of clinical attention is associated with borderline intellectual functioning, that is, an IQ in the 71-84 range. Differential diagnosis between Borderline Intellectual Functioning and Mental Retardation (an IQ of 70 or below) is especially difficult when the coexistence of certain mental disorders (*e.g.*, Schizophrenia) is involved.

(Tr. 132). A second passage provides information on mild mental retardation which states:

> Mild Mental Retardation is roughly equivalent to what used to be referred to as the education category of "educable." This group constitutes the largest segment (about 85%) of those with the disorder. As a group,

> people with this level of Mental Retardation
> typically develop social and communication
> skills during the preschool years (ages 0-5
> years), have minimal impairment in
> sensorimotor areas, and often are not
> distinguishable from children without Mental
> Retardation until a later age.  By their late
> teens, they can acquire academic skills up to
> approximately the sixth-grade level.  During
> their adult years, they usually achieve
> social and vocational skills adequate for
> minimum self-support, but may need
> supervision, guidance, and assistance,
> especially when under unusual social or
> economic stress.  Without appropriate
> supports, individuals with Mild Mental
> Retardation can usually live successfully in
> the community, either independently or in
> supervised settings.

(Tr. 133).

The Appeals Council considered the opinions and conclusions of Neuropsychologist Goff as well as the information from the DSM-IV, but found that they provided no basis for changing the ALJ's opinion (Tr. 5-8).  This decision, by the Appeals Council, is challenged by Plaintiff as he argues that the Appeals Council erred in failing to remand the case based on the additional evidence submitted to it (Doc. 14, p. 7).

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence."  *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review

12

when the Appeals Council accepts the case for review as well as when the Council denies review." *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  The Eleventh Circuit Court of Appeals has more recently held that "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007).

The Court finds that the evidence provided to the Appeals Council does not merit a reversal or remand of this action.  The Court first notes that the IQ test results from Goff's examination showed an eleven-point drop, on average, from the results from Blanton's examination; this approaches a difference of a standard deviation and more than would be expected.  King has asserted that Dr. Goff's conclusions indicated a cognitive decline which "raises the possibility of meeting Listing 12.02" (Doc. 14, p. 7); he also indicated that he thought she suffered more from dementia than mental retardation.  That possibility is one which should be pursued with another SSI application and not here.  Furthermore, though the information from the DSM-IV may be instructive—and more accurate, as well—it still does not change the fact that Plaintiff has not demonstrated that she suffers from deficits in adaptive behavior.  The Court finds that the

evidence which was submitted to the Appeals Council does not change the decision of the ALJ.  Plaintiff's claim otherwise is without merit.

King has raised four different claims in bringing this action.  None of those claims have convinced the Court that the decision of the ALJ is not supported by substantial evidence.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 30th day of April, 2008.

                                                s/BERT W. MILLING, JR.
                                                UNITED STATES MAGISTRATE JUDGE